## Pete Tafolla v. The State.

### No. 2846.   Decided December 10, 1913.

**1.—Carrying Pistol—Evidence—Other Transactions—Attack.**

Where, upon trial of unlawfully carrying a pistol, the facts showed that at the time the defendant carried the pistol, an exciting election was in progress and contended that he had reason to believe that there was danger of an attack from unknown persons, there was no error in excluding testimony as to the fights and riots of others during said elections; the defendant having testified himself that he was working in the interest of one of the candidates going from one polling place to another, and there being no showing of a threatened and imminent attack upon him.

**2.—Same—Charge of Court—Requested Charges.**

Where, upon trial of unlawfully carrying a pistol, the court's charge with the requested instructions given sufficiently presented any defense that the defendant was justly entitled to have submitted to the jury, there was no error in the court's refusal of other requested charges which were not applicable to the facts.

**3.—Same—Imminent Danger—Harmless Error.**

The law of this State permits a citizen to carry on or about his person a pistol whenever he has reasonable grounds for fearing an unlawful attack upon his person and the danger is so imminent and threatening as not to admit of the arrest of the party about to make the attack on him upon legal process, and where the court submitted this issue, although the evidence did not warrant it, the defendant could not complain.

4.—Same—Charge of Court—Intent.

· Where, upon trial of unlawfully carrying a pistol, the defendant did not show·that he was going about his usual business when he had the pistol in his buggy and on him, there was no error in the court's refusal of a requested instruction thereon.

5.—Same—Costs on Appeal—Liability of Sureties—Recall of Execution.

The sureties on the appellant's recognizance are responsible for the costs incidental to the appeal, and where execution was issued by .this court to collect such costs it will not be recalled. Following Arbuthnot v. State, 38 Texas Crim. Rep., 509.

Appeal from the County Court of Bexar County. Tried below before the Hon. J. R. Davis.

Appeal from a conviction of unlawfully carrying a pistol; penalty, a fine of $100.

The opinion states the case.

No brief on file for appellant.

*C. E. Lane,* Assistant Attorney-General, for the State.

DAVIDSON, JUDGE.—Appellant was convicted of carrying a pistol.

The facts show that there was an election in San Antonio somewhat exciting in its nature and a little strenuous, the election being held for the selection of a mayor of that city. The State's case is to the effect that on 13th of May, the day of the election, Mock was a policeman on duty at election poll No. 14, which was at the corner of West Commerce and Pinto Streets. The witness saw a crowd in which there seemed to be a fight at the corner of two streets and went to the scene of the trouble, and saw defendant standing on the ground near a buggy, saw him get in the buggy, and some one informed him that he had a ·pistol. Thereupon he searched defendant and took a pistol from his pants pocket, a small automatic pistol. Morales testified that defendant had been to election precinct No. 14 at the corner of West Commerce and Pinto Streets a number of times during the morning and was loud and boisterous, and was put out of the poll limits several times. In the evening he came back in his buggy and stopped at the corner of West Houston and Pinto Streets, a block from the poll, and began to hurrah, saying, "Oh, we got them beat," and witness went up to him and said, "If you think you have us beat, why don't you bet your money?" "He said he did not care to bet, that he did not have money. I told him he was afraid to bet; he said, your crowd has the money, and if you win the election, you will buy it. I called him a liar. He was in his buggy. He grabbed his whip, and I grabbed it away from him, and he ran his hand in his pocket as he got out of the buggy and pulled a pistol out of his pocket. The crowd prevented further trouble, and a policeman arrested and took his pistol." This witness was a supporter of the ticket headed by Clinton G. Brown and defendant was a supporter

of the ticket headed by Joseph Ryan, he being the opposing candidate for mayor. This is the State's case.

Appellant testified that he was a supporter of Ryan for mayor; that he was afraid he was going to be assaulted by supporters of Brown; that he had been told by three or four different parties he was in danger of being assaulted; that other Ryan men had been assaulted, and he wished to protect himself from any unlawful attack upon his person; he asked a deputy United States marshal for permission to carry a pistol but could not get the permit; and on election day he put the pistol in the bottom of his buggy between his feet and the dashboard and put a newspaper over it; that he was working on that day going from poll to poll in the city to see that the Ryan men voted, and to get them out to vote; his voting poll was No. 6. That he went with Mr. Poston from poll No. 15 in his buggy to poll No. 14, at the corner of West Commerce and Pinto Streets; that he was going to poll No. 6, and poll No. 14 was six or eight blocks out of his direct way to No. 6; that he stopped his buggy a block away at the corner of West Houston and Pinto Streets; that Poston got out of the buggy, and Joe Morales offered to bet that Brown would win. "I told him I did not want to bet; he seemed mad, and when I would not bet he slapped at me hard, and then grabbed my whip, and I got hold of the whip and he broke it; I then reached down in my buggy and got my pistol and just got out of the buggy, and the crowd got hold of Morales, and I put the pistol in my pocket and was getting back in the buggy when the policeman arrested me and found the pistol in my pocket." On cross-examination he testified, "Some three or four parties told me I was in danger; one of them was Sim Guerra. I don't remember the name of any other who told me or when I was told." Poston testified that he was in the buggy with defendant on the day of the city election; that when on the way to box No. 6 he saw the pistol on the bottom of the buggy between defendant's feet and the dashboard, and that it was still in the buggy when they got to West Houston and Pinto Streets, when he immediately got out, and did not see the commencement of the difficulty; that paper was over the pistol part of the time. Guerra testified that he never at any time told defendant he was going to be attacked or that he was in danger of being attacked. "This was at my house while I was in bed suffering from an assault. I was beat over the head with a pistol." This is the statement of facts.

There were quite a number of charges given and refused, which seem to present the case pretty generally and fairly well. There were quite a number of exceptions reserved by bills, the first of which is, in substance, as follows: Defendant offered to prove that a party of Brown supporters in the city election assaulted with knife and pistol one of the partisan supporters of Ryan for mayor, and then on the same night a party of Brown supporters invaded the west side headquarters of the Ryan supporters, and then and there assaulted and beat up with pistols a number of Ryan's supporters, which was offered to show that the defendant

had reasons to believe the warnings he had received as to his danger of attack from unknown persons to be true, and his inability to protect himself against such assault by having a number of unknown persons arrested by legal process. The county attorney objected to this testimony for the reason that the fights and riots of others could not justify defendant in carrying a pistol, and was irrelevant and immaterial to the case. Under the facts of this case we are of the opinion the court was correct in excluding this. Taken in connection with the evidence as given by the defendant himself it was not error. He shows that he was working that day over the city, going from one polling place to another in the interest of the Ryan ticket. This he had a right to do. Every citizen has a right to electioneer for his side of the question or for any candidate he sees proper to endorse or desires to see elected, but this would not justify him in carrying a pistol. If appellant was anticipating an attack from unknown parties, under the decisions of our court he would be justified in carrying some weapon of defense if the threatened attack was of such a nature as would authorize him to believe that his person or his life was in danger, but in this case appellant was going about the city from place to place for electioneering purposes, and seemed from the testimony a little enthusiastic, and on more than one occasion was taken by the officers from within the inhibited limits and where he should not have been. Under these circumstances we believe the court's ruling was correct, and this testimony was not authorized.

There were several charges asked by the defendant which were refused by the court, but we are of opinion that the charge given by the court and requested instructions given sufficiently presented any defense that he was justly entitled to have submitted. This requested charge was given: "You are instructed that if the defendant carried a pistol in his buggy at the bottom thereof near the dashboard then you will determine from the law given you in the court's charge whether or not. the same was on or about the person of defendant. And if the same was not on or about his person you should acquit the defendant, and upon this question if you have a reasonable doubt you will find defendant not guilty." Another requested charge was given, as follows: "If you find from the evidence, beyond a reasonable doubt, that the defendant, Pete Tafolla, did in Bexar County, Texas, on or about the time alleged in the information, carry on or about his person a pistol, and that at the time, the defendant did not then have a reasonable ground for fearing an unlawful attack upon his person and that the danger of such attack· was so imminent and threatening as not to admit of the arrest of the party or parties, if any, about to make such attack upon him, by legal process, then you will find the defendant guilty and assess his punishment by a fine of not less than one hundred dollars nor more than two hundred dollars; or by confinement in the county jail for any period of time not less than thirty days nor more than twelve months, or by both such fine and imprisonment in the discretion of the jury." The jury

was further charged, at the request of the defendant, that the burden of proof is on the State of Texas to prove beyond a reasonable doubt that the defendant did in Bexar County, Texas, at or about the time stated in the information, carry on or about his person a pistol. The following charge was also asked by appellant and given: "The law of this State permits a citizen to carry on or about his person a pistol whenever he has reasonable grounds for fearing an unlawful attack upon his person and the danger is so imminent and threatening as not to admit of the arrest of the party or parties about to make the attack on him, upon legal process. Therefore, even if you should find that the defendant did have and carry on or about his person a pistol in Bexar County, Texas, at or about the time charged in the information if you further find that the defendant then had reasonable ground for fearing an unlawful attack upon his person, and that the danger was so imminent and threatening as not to admit of the arrest by legal process of the party about to make such attack, then you will find the defendant not guilty." The following charge was also asked by appellant and given: "In all criminal prosecutions the defendant is presumed to be innocent until his guilt is established by the State, beyond a reasonable doubt. In this case you are instructed that the burden is upon the State to prove the guilt of defendant beyond a reasonable doubt, and if you have a reasonable doubt as to the guilt of the defendant you will give him the benefit of that doubt and find him not guilty. You are the exclusive judges of the credibility of the witnesses and of the weight to be given to their testimony, but you are bound to receive the law from the court as it is herein given you and be governed thereby."

The following charge was asked but refused: "If you find from the evidence that the defendant, at the time and place mentioned in the information, had a pistol lying in the bottom of a buggy in which he was then and there sitting, and that upon apprehending an attack upon his person, if any he did so apprehend, he took the pistol in his hand with the intention of resisting such attack, then you are instructed that under such circumstances the defendant would not be guilty; and if you so find the facts you will acquit the defendant." There are other charges along the same line which were asked and refused, but we are of opinion the court did not err in refusing the requested instructions inasmuch as he had sufficiently presented these phases of the law; nor do we believe the court was in error in refusing to charge the jury that the fact that appellant placed the pistol in the buggy and carried it as he says he carried it under the circumstances detailed by himself, without taking into consideration the State's evidence, that he was justified in carrying the pistol. If appellant was going about his usual business and had been informed that unknown parties would likely assault him, or had threatened to do so, and not knowing who the parties were, he would be justified in preparing for his defense against such assault. But under the facts of this case the appellant himself makes it apparent that he was not going about his usual business, but was going about

the city interesting himself in the candidacy of Mr. Ryan for mayor of the city. This he might do, but he was not justified in going from polling place to polling place carrying a pistol and conducting himself as the witnesses state he was doing. This would be carrying the doctrine of carrying a pistol under our law beyond what was intended by the law to protect him in carrying the pistol. Therefore, the court did not err in giving the charges quoted, and similar charges presenting this phase of his contention. Under the facts we think appellant was not justified in carrying the pistol.

Believing there was no such error committed as deprived appellant of a fair trial or deprived him of any legal rights under the pistol law, we think the judgment ought to be affirmed and it is accordingly so ordered.

*Affirmed.*

ON MOTION TO WITHDRAW EXECUTION.

May 6, 1914.

DAVIDSON, JUDGE.—Upon a final disposition of the appeal in this case execution was issued by the clerk of this court to collect the cost incidental to the appeal. The mandate and execution were forwarded to the county from which the case was appealed, Bexar County. Appellant files a motion to withdraw and recall the execution for reasons stated in the motion, the general proposition being that his sureties are not responsible on the recognizance on appeal for cost. We deem it unnecessary to enter into any elaborate discussion of the question, as it has been several times heretofore decided, especially in the Arbuthnot case. 38 Texas Crim. Rep., 509; see also Bonn v. State, 12 Texas Crim. App., 100; Prater v. State, 54 Texas Crim. Rep., 18. These cases decide the question adversely to appellant's contention. On the authority of these cases the motion to recall the execution will be denied, and it is accordingly so ordered.

*Motion overruled.*